IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

JAMEL MONROE,

                        Plaintiff,

                                        Civ. Action No.
                                        9:06-CV-0859 (FJS/DEP)

        vs.

CORRECTION OFFICER JANES, *et al.,*

                        Defendants.

_____

APPEARANCES:                    OF COUNSEL:

<u>FOR PLAINTIFF</u>:

JAMEL MONROE, *Pro Se*

<u>FOR DEFENDANTS</u>:

HON. ANDREW M. CUOMO            MARIA MORAN, ESQ.
Office of Attorney General       Ass't Attorney General
615 Erie Blvd. West, Suite 102
Syracuse, New York 13204-2455

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Jamel Monroe, a former New York State prison inmate who

is proceeding *pro se* and *in forma pauperis,* has commenced this action

pursuant to 42 U.S.C. § 1983 against three corrections workers employed

at the prison facility in which he was housed at the relevant times, sued both individually and in their official capacities, alleging deprivation of his civil rights, and additionally asserting copyright infringement claims. Plaintiff's claims arise from defendants' search of his prison cell, the confiscation of certain of his property including allegedly protected intellectual property, and the filing of a misbehavior report which, following a disciplinary hearing, resulted in his having to serve seventy-six days in disciplinary keeplock confinement, with a corresponding loss of certain prison privileges.  Plaintiff's complaint alleges defendants' violation of his constitutional rights under the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution, and additionally asserts a claim of copyright infringement in violation of the Copyright Revision Act of 1976, Title 17 U.S.C. § 101 *et seq.*  As relief, plaintiff seeks recovery of compensatory and punitive damages in the total amount of $3.5 million.

Currently pending before the court in connection with this action are cross-motions for summary judgment.  Plaintiff initiated the motion process by filing an application for summary judgment, asserting the lack of any genuinely disputed issue of material fact and his entitlement to judgment in connection with his various claims, as a matter of law.

Defendants have since countered with a cross-motion for summary judgment, arguing that the uncontroverted facts fail to support any of plaintiff's constitutional and copyright infringement claims.

Having carefully reviewed the record now before the court in light of the arguments raised by the parties in their cross-motions, I find that no reasonable factfinder could conclude that plaintiff's constitutional rights were violated by defendants' actions, or that defendants infringed plaintiff's protected rights under the Copyright Act, and therefore recommend that defendants' motion for summary judgment be granted and that plaintiff's complaint be dismissed, and that plaintiff's summary judgment motion be denied.

I.     BACKGROUND

Except where otherwise noted, the facts material to plaintiff's claims are uninvolved, and not particularly controversial.  At the times relevant to his claims the plaintiff, who in May of 2007 was released on parole, was a prison inmate entrusted to the custody of the New York State Department of Correctional Services (the "DOCS") and designated to the Mid-State Correctional Facility located in Marcy, New York.  *See generally* Plaintiff's Complaint (Dkt. No. 1); *see also* Janes Decl. (Dkt. No. 18-5) ¶ 2.

On the morning of June 22, 2006, plaintiff's cube at Mid-State was searched by Corrections Officer Michael Janes.  Complaint (Dkt. No. 1) at 2-3; Janes Decl. (Dkt. No. 18-5) ¶ 3.  That search was precipitated by Corrections Officer Janes observing the plaintiff, who at the time was on room restriction, exchanging papers with another inmate.[1]  Janes Decl. (Dkt. No. 18-5) ¶¶ 3-4.  After seizing and reviewing the papers, which appeared to be business-related, Officer Janes returned them to the plaintiff and contacted Corrections Captain Labriola, who authorized a search of plaintiff's cube area.  *Id.*

A search of plaintiff's cube was subsequently conducted by Officer Janes.  Complaint (Dkt. No. 1) at 2; Janes Decl. (Dkt. No. 18-5) ¶ 4.  As a result of the search Officer Janes confiscated approximately sixteen pages of materials from plaintiff's cube, appearing to relate to the formation of a musical group and including a partnership agreement between the plaintiff and another inmate, Manual Restituyo.  *Id.; see also* Defendants' Exhibits (Dkt. No. 18-3) Exh. D.  The materials seized from plaintiff's cube were placed in a packet along with a contraband slip and forwarded to

---

[1]     Prisoners on room restriction are prohibited by DOCS policy from having visitors. Janes Decl. (Dkt. No. 18-5) ¶ 3.  In addition, all inmates are prohibited by DOCS rules from exchanging personal properly with other prisoners without authorization.  *Id.*

Corrections Lieutenant G. Lawrence for review and a determination of whether they evidenced any violation of DOCS policies. Janes Decl. (Dkt. No. 18-5) ¶ 4.  Plaintiff alleges that in the process, certain of the documents seized were copied and/or destroyed.  *See, e.g.,* Complaint (Dkt. No. 1), at 4; Monroe Decl. (Dkt. No. 14) ¶ 1.  Corrections Officer Janes denies either destroying or making copies of any materials confiscated from the plaintiff.[2]  Janes Decl. (Dkt. No. 18-5) ¶ 5.

On June 29, 2006 plaintiff was issued a misbehavior report by Corrections Lieutenant Lawrence, charging him with violation of DOCS rules of conduct governing correspondence procedures (Rule 180.11), and specifically alleging that plaintiff had engaged in a business venture with another inmate, Manuel Restituyo, in violation of a directive which prohibits inmates from conducting business while in DOCS custody.[3] Defendants' Exhibits (Dkt. No. 18-3) Exh. A.  A Tier III superintendent's

---

[2]        As will be seen, defendants have submitted evidence tending to suggest that in February of 2007, after commencement of this action and submission of plaintiff's declaration in support of his summary judgment motion, the documents seized from his cube were returned to him.  Defendants' Exhibits (Dkt. No. 18-3) Exhs. D, E.

[3]        According to the plaintiff, parallel charges lodged against fellow inmate Restituyo were dismissed, based upon the failure of prison officials to conduct a disciplinary hearing within fourteen days of issuance of the misbehavior report containing the accusations.  Monroe Decl. (Dkt. No. 14) ¶ 6.

hearing was subsequently conducted in connection with the misbehavior report by Deputy Superintendent C. Bulson on July 3, 2006, resulting in a finding that plaintiff had in fact committed the disciplinary infraction alleged and the imposition of a period of disciplinary confinement in the facility's special housing unit ("SHU") for ninety days, with a corresponding loss of commissary, package and telephone privileges.[4] *Id.* Exh. B.

The adverse disciplinary hearing determination was appealed by Monroe, leading ultimately to the issuance of a decision by Keith F. Dubree, the Acting DOCS Director of Special Housing/Inmate Discipline, reversing the finding based upon the hearing officer's failure to interview the reporting employee in order to substantiate the charge. *Id.* Exh. C.  As a result of that reversal, plaintiff was released from disciplinary confinement after having served seventy-six days, his record was expunged, and the confiscated materials were returned to him on or about February 27, 2007.  Defendants' Exhibits (Dkt. No. 18-3) Exhs. C-E;

---

[4]      The DOCS conducts three types of inmate disciplinary hearings.  Tier I hearings address the least serious infractions, and can result in minor punishments such as the loss of recreation privileges.  Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the Special Housing Unit (SHU).  Tier III hearings concern the most serious violations, and could result in unlimited SHU confinement and the loss of "good time" credits. *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied*, 525 U.S. 907, 119 S. Ct. 246 (1998).

Monroe Decl. (Dkt. 14) ¶ 8.

II.    PROCEDURAL HISTORY

Plaintiff commenced this action on July 14, 2006.  Dkt. No. 1.

Named as defendants in plaintiff's complaint are Corrections Officer

Michael Janes, Corrections Captain Labriola, and Corrections Lieutenant

G. Lawrence, each of whom is sued both individually and in his official

capacity.  *Id.*  Plaintiff's complaint asserts a single cause of action against

each defendant, claiming violations of his rights under the First, Fourth,

Eighth and Fourteenth Amendment to the United States Constitution,

based upon their actions, and additionally asserting a claim of copyright

infringement against each of them.  *Id.*  Issue was joined by the filing on

January 4, 2007 of an answer on behalf of the defendants admitting many

of plaintiff's allegations of fact but generally denying plaintiff's

constitutional and copyright infringement claims and asserting various

affirmative defenses.  Dkt. No. 13.

On February 5, 2007 plaintiff moved seeking the entry of summary

judgment in his favor.  Dkt. No. 14.  In his motion, plaintiff asserts that

there are no genuinely disputed issues of material fact to be resolved

before his legal claims can be adjudicated, and that he is entitled to

judgment as a matter of law on his various claims.  *Id.*  Defendants have since responded in opposition to plaintiff's motion, and additionally have cross-moved for summary judgment asserting their entitlement to summary judgment as a matter of law dismissing each of plaintiff's federal claims.[5]  Dkt. No. 18.  The parties' cross-motions are now ripe for determination and have been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed. R. Civ. P. 72(b).

III.    DISCUSSION

A.    Summary Judgment Standard

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex*

---

[5]    Papers submitted by the plaintiff on or about June 1, 2007, in opposition to defendants' cross-motion for summary judgment, were stricken by the court based upon his failure to include proof of service of those papers upon defendants' counsel. *See* Dkt. Nos. 20, 21.  Since the striking of those papers, they have not been properly refiled, and I have therefore not considered them in making my review of the pending cross-motions.

*Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505,

2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight Line,*

*Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for purposes

of this inquiry, if it "might affect the outcome of the suit under the

governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also*

*Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing

*Anderson*).  A material fact is genuinely in dispute "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs

are entitled to special latitude when defending against summary judgment

motions, they must establish more than mere "metaphysical doubt as to

the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475

U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith*

*Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court

to consider whether *pro se* plaintiff understood nature of summary

judgment process).

   When summary judgment is sought, the moving party bears an initial

burden of demonstrating that there is no genuine dispute of material fact

to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion.  *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor."  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.  <u>Dismissal of Plaintiff's Claims Against the Defendants in their Official Capacities</u>

In his complaint plaintiff seeks recovery of damages in substantial

10

amounts against the three defendants, who are sued both as individuals and in their official capacities as DOCS employees.  In their motion, defendants contend that any recovery against them for damages as DOCS employees is precluded by virtue of the Eleventh Amendment.

The Eleventh Amendment protects a state against suits brought in federal court by citizens of that state, regardless of the nature of the relief sought.  *Alabama v. Pugh*, 438 U.S. 781, 782, 98 S. Ct. 3057, 3057-58 (1978).  This absolute immunity which states enjoy under the Eleventh Amendment extends to both state agencies and state officials sued in their official capacities, when the essence of the claim involved is one against a state as the real party in interest.  *Richards v. State of New York Appellate Division, Second Department*, 597 F. Supp. 689, 691 (E.D.N.Y. 1984), (citing *Pugh* and *Cory v. White,* 457 U.S. 85, 89-91 102 S. Ct. 2325, 2328-2329 (1982)).  "To the extent that a state official is sued for damages in his official capacity . . . the official is entitled to invoke the Eleventh Amendment immunity belonging to the state."[6]  *Hafer v. Melo*, 502 U.S. 21, 25, 112 S. Ct. 358, 361 (1991); *Kentucky v. Graham*, 473 U.S. 159,

---

[6]      By contrast, the Eleventh Amendment does not establish a barrier against suits seeking to impose individual or personal liability on state officials under section 1983.  *See Hafer v. Melo*, 502 U.S. 21, 30-31, 112 S. Ct. 361, 364-65 (1991).

11

166-67, 105 S. Ct. 3099, 3105 (1985).

Because plaintiff's damage claims against the defendants in their official capacities are clearly barred by the Eleventh Amendment, I recommend dismissal of those claims as a matter of law.  *See Daisernia v. State of New York,* 582 F. Supp. 792, 798-99 (N.D.N.Y. 1984) (McCurn, J.).

    C.    Merits of Plaintiff's Constitutional Claims

In his complaint plaintiff asserts that defendants' actions deprived him of rights secured under the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution.  Defendants assert that each of those claims lacks merit as a matter of law.

        1.    First Amendment

Plaintiff's complaint references violation of his rights under the First Amendment.  The basis for plaintiff's assertion in this regard, however, is not readily apparent.

Although this is far from evident, plaintiff could be asserting that by their actions, defendants interfered with his First Amendment rights of free speech and to association with his fellow inmate.  If this is the basis for plaintiff's First Amendment claim, then it is legally deficient as a matter of

12

law.  While an inmate does not forfeit all rights secured by the United

States Constitution upon entering prison, many of those rights are by

definition extinguished or, in some cases, give way to legitimate,

countervailing penological concerns.  *Shakur v. Selsky*, 391 F.3d 106, 113

(2d Cir. 2004).  The right of corrections officials to control inmate speech

and other behavior through the imposition of measures reasonably

calculated to preserve the safety and security of a prison facility, its

employees and inmates, is well-established, even though such measures

may impinge upon an inmate's ability to speak freely or associate with

others.  *See Auleta v. LaFrance*, 233 F. Supp. 2d 396, 399 (N.D.N.Y.

2002) (Kahn, J.) (noting that restrictions on inmate communication are

constitutional if reasonably related to legitimate penological interests)

(citing *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 2261 (1987)).

In this instance the plaintiff, who was on room restriction at the

relevant times, was prohibited by DOCS policies from having visitors.

Such restrictions are reasonably related to legitimate penological

concerns, and do not give rise to constitutional claims for deprivation of

the right of association.  *See*, *e.g.*, *Percy v. Jabe*, 823 F. Supp. 445, 448

(E.D. Mich. 1993) (indicating that prison officials should be afforded wide

latitude to impose visitation restrictions at prisons in light of, *inter alia*, perceived threats to security and order of the institution).

Another plausible basis for a First Amendment claim, given the circumstances now presented, is the contention that prison officials punished the plaintiff in retaliation for his having engaged in protected activity.  Plaintiff's complaint, generously construed, could be regarded as claiming that in response to the filing of a grievance surrounding the confiscated materials, after the issuance of the misbehavior report which led to his keeplock confinement, or having filed earlier grievances against prison officials, he was found guilty following a hearing based purely upon retaliatory animus.

In order to state a *prima facie* claim under section 1983 for retaliatory conduct, a plaintiff must advance non-conclusory allegations establishing that 1) the conduct at issue was protected; 2) the defendants took adverse action against the plaintiff; and 3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97

14

S. Ct. 568, 576 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007);

*Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other*

*grounds*, *Phelps v. Kapnolas*, 308 F.3d 180 (2d Cir. 2002).  If the plaintiff

carries this burden, the defendants must show by a preponderance of the

evidence that they would have taken action against the plaintiff "even in

the absence of the protected conduct."  *Mount Healthy*, 429 U.S. at 287,

97 S. Ct. at 576.  If taken for both proper and improper reasons, then,

state action may be upheld if the action would have been taken based on

the proper reasons alone.  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.

1996) (citations omitted).

     Evaluation of claims of retaliation is a particularly fact-laden

exercise, since such claims revolve around both engaging in protected

conduct, as well as establishment of a nexus between that conduct and

the adverse action ultimately taken.  Claims of unlawful retaliation in a

prison setting, in violation of an inmate's First Amendment rights, are

easily incanted.  *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

For these reasons courts afford extraordinarily close scrutiny to such

claims, particularly when examined on motion for summary judgment, in

order to determine whether a reasonable factfinder could conclude that

there is evidence to support the three critical elements necessary to sustain such a claim.  *Id.* ("[B]ecause we recognize both the near inevitability of decisions and actions by prison officials to which prisoners will take exception and the ease with which claims of retaliation may be fabricated, we examine prisoners' claims of retaliation with skepticism and particular care.").

In this instance the record is devoid of any evidence which would lead a reasonable factfinder to conclude that the finding of guilt by Deputy Superintendent C. Bulson, acting as a hearing officer, was rendered in retaliation for plaintiff having filed a prior grievance, either based upon the actions of Corrections Officer Janes in confiscating materials from his cube, or otherwise.  Because plaintiff's retaliation claims have been alleged in only conclusory form, and are not supported by any evidence now in the record establishing a nexus between any protected activity on his part and the adverse actions complained of, I recommend that defendants' motion for summary judgment dismissing plaintiff's First Amendment claim, to the extent that it could be construed as claiming unlawful retaliation be granted.  *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

16

2.      Fourth Amendment

Plaintiff argues that his Fourth Amendment rights were violated both as a result of the search of his cubicle and the confiscation and long term retention of documents uncovered during the course of that search. Defendants counter that as a prison inmate plaintiff enjoyed no protections under the Fourth Amendment, and his claim under that provision is legally deficient.

The Fourth Amendment to the United States Constitution generally proscribes unreasonable searches and seizures.[7]  *Elkins v. United States*, 364 U.S. 206, 222, 80 S. Ct. 1437, 1446 (1960) ("[W]hat the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures).  The protections afforded by that amendment, however, do not extend into prison settings; consequently, inmates enjoy no constitutional protection against prison cell searches, whether supported by some

_____

[7]      That amendment provides that

> [t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

U.S. Const. amend IV.

17

measure of reasonable suspicion.  *Lashley v. Wakefield*, 367 F. Supp. 2d

461, 470 (W.D.N.Y. 2005) (citing *Hudson v. Palmer*, 468 U.S. 517, 530,

104 S. Ct. 3194, 3202 (1984)).

I note that even assuming *arguendo* the existence of a Fourth

Amendment claim associated with the confiscation of the property of

prison inmates, no reasonable factfinder could conclude in this instance

that plaintiff's rights were violated.  The search of plaintiff's cell was

conducted based upon reasonable suspicion that by engaging in a

business venture with a fellow inmate, plaintiff had violated prison rules of

conduct.  The materials confiscated as a result of that search appeared on

their face to relate to a business enterprise being conducted by the plaintiff

and a fellow inmate, thereby substantiating the suspicion that plaintiff had

indeed violated the DOCS policy precluding inmates from engaging in

business ventures while incarcerated, and provided a basis to confiscate

the materials, which included a partnership agreement between the two

inmate joint venturers.  Under the circumstances the confiscation of

plaintiff's materials, both as contraband and for use as evidence in

disciplinary hearings against the two inmates, served legitimate

penological interests and did not run afoul of the Fourth Amendment.

*See*, *e.g.*, *Lashley*, 367 F. Supp. 2d at 470 (indicating that bi-monthly random cell searches performed at maximum security prison in an effort to maintain discipline and security, as well as to search for weapons and contraband, were supported by legitimate penological interests). Accordingly, plaintiff's Fourth Amendment claim is subject to dismissal as a matter of law.

        3.    Eighth Amendment

The Eighth Amendment contains a general proscription against cruel and unusual punishment.[8] The Eighth Amendment's prohibition of cruel and unusual punishment encompasses punishments that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102, 104, 97 S .Ct. 285, 290, 291 (1976); *see also Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citing, *inter alia, Estelle*). While the Eighth Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment of those in confinement; thus the conditions

---

[8]     That amendment provides that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

of an inmate's confinement are subject to Eighth Amendment scrutiny. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400 (1981)).

Once again, plaintiff's complaint does not readily disclose the particulars forming the foundation for his Eighth Amendment claim. Presumably, that claim stems from his having spent seventy-six days in disciplinary confinement as a result of the initial hearing determination. While such punishment may implicate other constitutional rights, the service of a disciplinary sentence of keeplock confinement under ordinary conditions prevailing in an SHU setting does not rise to a level of constitutional significance under the Eighth Amendment and, as a matter of law, fails to support a claim of cruel and unusual punishment under that provision.[9]  *Warren v. Irvin*, 985 F. Supp. 350, 357 (W.D.N.Y. 1997) (asserting that ordinary deprivations occurring during 161 days in SHU

---

[9]      New York prisoners confined in SHU conditions experience significant restrictions.  SHU cells are utilized for segregating prisoners from general population areas for various reasons including, predominantly, disciplinary purposes. *Lee v. Coughlin*, 26 F. Supp. 2d 615,  618 (S.D.N.Y. 1998) (citing 7 N.Y.C.R.R. pts. 253, 254, and 301).  The conditions typically experienced by inmates confined in an SHU include two showers per week; one hour of outdoor exercise per day; unlimited legal visits; one non-legal visit per week; access to counselors; access to sick call; cell study programs; and access to library books.  *Husbands v. McClellan*, 990 F. Supp. 214, 218 (W.D.N.Y. 1998) (citing 7 N.Y.C.R.R. pt. 304).

"are not sufficiently serious to constitute cruel and unusual punishment under the Eighth Amendment").  Plaintiff's Eighth Amendment claim is therefore subject to dismissal as well.

### 4.   Fourteenth Amendment

Plaintiff's complaint contains both equal protection denial and procedural due process deprivation claims under the Fourteenth Amendment to the United States Constitution.

### a)   Equal Protection

The Equal Protection Clause of the Fourteenth Amendment directs state actors to treat similarly situated people alike.  *See City of Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254 (1985).  To prove a violation of the Equal Protection Clause, a plaintiff must demonstrate that he or she was treated differently than others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class.  *See Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir.1995) (citing, *inter alia*, *McCleskey v. Kemp*, 481 U.S. 279, 292, 107 S. Ct. 1756, 1767 (1987)).  The plaintiff must also show that the disparity in treatment "cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate

that his treatment was not reasonably related to [any] legitimate penological interests." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225, 121 S.Ct. 1475 (2001) (internal quotation marks omitted)).

Plaintiff's equal protection violation claim appears to be based solely upon the fact that while both he and his fellow inmate engaged in an allegedly unlawful business venture, and both were issued misbehavior reports based upon that conduct, he was prosecuted through to completion of the disciplinary hearing, resulting in a period of disciplinary confinement, while his fellow inmate was not. Although this claimed disparity in treatment is supported by the record, it is insufficient, particularly in the face of a summary judgment motion, to support the finding of an Equal Protection Clause violation, for the plaintiff to demonstrate simply that he was treated differently than another similarly situated individual.

Assuming that both plaintiff and his fellow inmate were indeed similarly situated – a conclusion which is not necessarily compelled by the record – for the plaintiff to prevail he must also demonstrate that he was treated differently as a result of intentional, purposeful discrimination

22

directed at him as a member of an identifiable or suspect class, or as a direct result of invidious discrimination.  *See Giano*, 54 F.3d at 1057.  In this instance, plaintiff does not allege that the differential in treatment between himself and his fellow inmate was based upon a protected classification, or was the result of invidious discrimination not reasonably related to any legitimate penological interest.  Accordingly, plaintiff has failed to carry his burden of establishing an equal protection deprivation, and no reasonable factfinder could conclude otherwise.

          b)         <u>Procedural Due Process</u>

Plaintiff's complaint also asserts a deprivation of procedural due process growing out of the issuance of the misbehavior report and the procedures which followed.[10]

To successfully state a claim under 42 U.S.C. § 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that

---

[10]    I have reviewed the relevant portions of the DOCS directives allegedly violated by the plaintiff, and would agree with the plaintiff that the text of the section under which he was charged, considered in a vacuum, does not appear to prohibit business ventures between inmates of the same prison facility.  *See* DOCS Directive 4422, codified at 7 N.Y.C.R.R. § 720.3(k).  It is not this court's function, however, to determine whether plaintiff did in fact commit a violation of DOCS directives, as alleged.  Instead, this court's role is limited to ensuring that plaintiff's constitutional rights, including to due process of law, were not violated during the course of the disciplinary proceedings against him.  *See, e.g., Johnson v. Goord*, 487 F. Supp. 2d 377, 385 (S.D.N.Y. 2007) (noting that plaintiff is entitled to relief on section 1983 claim related to alleged due process violations during disciplinary hearing "only if he can show a violation of his constitutional rights, not a violation of state laws or regulations").

he or she both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being afforded sufficient process.  *See Tellier v. Fields,* 260 F.3d 69, 79-80 (2d Cir. 2000) (citations omitted); *Hynes*, 143 F.3d at 658; *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996).

In *Sandin v. Conner*, 515 U.S. 472, 115 S. Ct. 2293 (1995), the United States Supreme Court determined that to establish a liberty interest, a plaintiff must sufficiently demonstrate that (1) the State actually created a protected liberty interest in being free from segregation; and that (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Id.* at 483-84, 115 S. Ct. at 2300; *Tellier*, 280 F.3d at 80; *Hynes*, 143 F.3d at 658.  Since the prevailing view is that by its regulatory scheme New York State has created a liberty interest in remaining free from disciplinary confinement, thus satisfying the first *Sandin* factor, *see, e.g., LaBounty v. Coombe*, No. 95 CIV 2617, 2001 WL 1658245, at *6 (S.D.N.Y. Dec. 26, 2001); *Alvarez v. Coughlin,* No. 94-CV-985, 2001 WL 118598, at *6 (N.D.N.Y. Feb. 6, 2001) (Kahn, J.), I must find that the conditions of plaintiff's SHU confinement as alleged do not rise to the level of an atypical and

24

significant hardship under *Sandin* in order to recommend that defendants'

motion be granted.

Atypicality in a *Sandin* inquiry is normally a question of law.[11]  *Colon*

*v. Howard,* 215 F.3d 227, 230-31 (2d Cir. 2000); *Sealey v. Giltner*, 197

F.3d 578, 585 (2d Cir. 1999).   When determining whether a plaintiff

possesses a liberty interest, district courts must examine the specific

circumstances of confinement, including analysis of both the length and

conditions of confinement.  *See Sealey,* 197 F.3d at 586; *Arce v. Walker*,

139 F.3d 329, 335-36 (2d Cir. 1998); *Brooks v. DiFasi*, 112 F.3d 46, 48-49

(2d Cir. 1997).  In cases involving shorter periods of segregated

confinement where the plaintiff has not alleged any unusual conditions,

however, a detailed explanation of this analysis is not necessary.[12]

---

[11]      In cases where there is factual dispute concerning the conditions or
duration of confinement, however, it may nonetheless be appropriate to submit those
disputes to a jury for resolution.  *Colon v. Howard,* 215 F.3d 227, 230-31 (2d Cir.
2000); *Sealey v. Giltner,* 197 F.3d 578, 585 (2d Cir. 1999).

[12]      While not the only factor to be considered, the duration of a disciplinary
keeplock confinement remains significant under *Sandin.  Colon*, 215 F.3d at 231.
Specifically, while under certain circumstances confinement of less than 101 days
could be shown to meet the atypicality standard under *Sandin*, *see id.* at 232 n.5, the
Second Circuit generally takes the position that SHU confinement under ordinary
conditions of more than 305 days rises to the level of atypicality, whereas normal SHU
confinement of 101 days or less does not.  *Id.* at 231-32 (305 days of SHU
confinement constitutes an atypical and sufficient departure).  In fact, in *Colon v.
Howard* a Second Circuit panel split markedly on whether or not adoption of a 180-day
"bright line" test for examining SHU confinement would be appropriate and helpful in
resolving these types of cases. *See id.* at 232-34 (Newman, C.J.), 235-37 (Walker, C.J.

*Hynes*, 143 F.3d at 658; *Arce*, 139 F.3d at 336.

Plaintiff's due process claim in this instance is deficient based upon his failure to establish that he possessed but was deprived of a cognizable liberty or property interest; courts have consistently held that disciplinary confinement for periods similar to those involved in this instance do not arise to a level sufficient to support a procedural due process claim. *See Rivera v. Coughlin*, No. 92 Civ. 3404, 1996 WL 22342, at *4 (S.D.N.Y. Jan. 22, 1996) (finding that plaintiff's eighty-nine days in keeplock did not constitute atypical or significant hardship sufficient to create a liberty interest); *Zamakshari v. Dvoskin*, 899 F. Supp. 1097, 1108 (S.D.N.Y. 1995) (concluding that sixty days in SHU for disciplinary offense was not an "atypical and significant hardship"); *Rosario v. Selsky*, No. 94 Civ. 6872, 1995 WL 764178, at *5-6 (S.D.N.Y. Dec. 28, 1995) (determining that eight-five days in SHU was insufficient to create a liberty interest). Additionally, even assuming he can establish the deprivation of an interest sufficient to trigger the Fourteenth Amendment's protections, neither plaintiff's complaint nor the record in this case discloses any procedural shortcoming associated with the hearing and related proceedings in this

---

and Sack, C.J., concurring in part).

matter.[13]

In sum, I find that neither plaintiff's complaint nor the record discloses any departure from the Fourteenth Amendment's guarantees sufficient to support a procedural due process violation.

D.     Plaintiff's Conspiracy Claims

Liberally construed, plaintiff's complaint could be interpreted as asserting a claim that the three defendants conspired to commit violations of his constitutional rights, and additionally to commit copyright infringement.  Defendants also seek dismissal of plaintiff's conspiracy claims as a matter of law.

To sustain a conspiracy claim under § 42 U.S.C. 1983, a plaintiff must demonstrate that a defendant "acted in a wilful manner, culminating in an agreement, understanding or meeting of the minds, that violated the plaintiff's rights . . . secured by the Constitution or the federal courts."

---

[13]     The procedural safeguards to which a prison inmate is entitled before being deprived of a constitutionally cognizable liberty interest are well-established, the contours of the requisite protections having been articulated in *Wolff v. McDonnell*, 418 U.S. 539, 564-67, 94 S. Ct. 2963, 2978-80 (1974).  Under *Wolff*, the constitutionally mandated due process requirement, include 1) written notice of the charges; 2) the opportunity to appear at a disciplinary hearing and present witnesses and evidence, subject to legitimate safety and penological concerns; 3) a written statement by the hearing officer explaining his or her decision and the reasons for the action being taken; and 4) in some circumstances, the right to assistance in preparing a defense. *Wolff*, 418 U.S. at 564-67, 94 S. Ct. at 2978-80; *see also Eng v. Coughlin*, 858 F.2d 889, 897-98 (2d Cir. 1988).

*Malsh v. Austin*, 901 F. Supp. 757, 763 (S.D.N.Y. 1995) (citations and internal quotation marks omitted).  Conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights do not state a claim for relief under section 1983.  *See Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.), *cert. denied*, 464 U.S. 857, 104 S. Ct. 177 (1983).

While plaintiff's complaint appears to identify the three defendants as participants in the alleged conspiracy, the record is devoid of any evidence reflecting agreement or a "meeting of the minds", nor does it provide any details as to the time and the place of the conspiracy or its objective.  Such deficiencies are fatal to plaintiff's conspiracy claim. *Warren v. Fischl,* 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999).  Because plaintiff has asserted claims of conspiracy in only vague and conclusory terms and, in the face of defendants' summary judgment motion, has failed to come forward with evidence to support such a conspiracy claim, I recommend its dismissal as a matter of law.[14]  *See Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir. 1990), *cert. denied*, 499 U.S. 937, 111 S. Ct. 1399

---

[14]   It is likely that plaintiff's conspiracy claims would be destined to fail in any event in light of the intra-agency doctrine, under which claims of conspiracies between persons employed by the same entity are generally not cognizable as a matter of law. *See Johnson v. Constantellis*, No. 03 Civ. 1267, 2005 WL 2291195, at *14 (S.D.N.Y. Aug. 10, 2005) ("It is, of course, correct that a conspiracy claim is not cognizable if all of the alleged parties to the conspiracy are employed by the same entity.").

(1991); *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987).

     E.    <u>Copyright Infringement</u>

     While plaintiff asserts his ownership of a registered copyright to a logo design for use in connection with his contemplated musical group, and alleges, without providing any specifics, that the defendants duplicated his copyrighted logo, there is no allegation that the copying, if indeed it occurred, was done for commercially exploitative reasons or otherwise caused him economic harm.  Instead, the implication of plaintiff's allegation is that in apparent preparation for use in the disciplinary hearing defendants may have caused copies of the confiscated materials to be made for use as evidence.  Asserting that the record does not support plaintiff's claim that his copyrighted logo was copied, defendants now seek dismissal of Monroe's copyright claim.

     Copyright infringement is established when a plaintiff proves both ownership of a valid copyright, and an accused infringer's abridgement of one of the exclusive rights conferred by the Act upon a copyright owner. *Davis v. Blige*, 505 F.3d 90, 98-99 (2d Cir. 2007) (citing *Knickerbocker Toy Co., Inc. v. Azrak-Hamway Int'l, Inc.*, 668 F.2d 699, 702 (2d Cir. 1982)). Among the exclusive rights statutorily granted to copyright owners is the

right to reproduce the protected work in issue.  17 U.S.C. § 106(1); *see*

*Aymes v. Bonelli*, 47 F.3d 23, 25 (2d Cir. 1995); *Am. Geophysical Union v.*

*Texaco Inc.*, 60 F.3d 913, 930 (2d Cir. 1994).  Copyright infringement is

therefore established by proof of both ownership of a valid copyright and

copying of protected elements of the work in question.  *Davis*, 505 F.3d at

98-99.  In their motion defendants do not challenge plaintiff's claim of

ownership of a valid copyright protecting his logo.[15]  The focus of

defendants' motion, as it relates to plaintiff's copyright infringement claim,

is upon the element of copying.  In their motion, defendants assert that the

record is lacking in any evidence that plaintiff's protected work was copied

by the defendants.

It is true that in his affidavit, Corrections Officer Janes unequivocally

states that he did not make copies of any of the materials confiscated from

plaintiff's cubicle during the course of his search on June 22, 2006.  *See*

---

[15]    While neither plaintiff's complaint nor his moving papers contain a
certificate evidencing registration of the Rock Hard Music Group logo, publically
available information from the United States Copyright Office confirms the issuance on
June 3, 2005 of registration certificate no. VAu000674934 to Manual A. Restituyo
Concepcion and Jamel M. Monroe for that logo design. *See*
http://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?DB=local&PAGE=First.   The issuance
of a copyright registration certificate constitutes *prima facie* evidence of the validity of
the copyright and of the facts set forth in the registration certificate.  17 U.S.C. §
410(c); *see Zitz v. Pereira*, 119 F. Supp. 2d 133, 142 (E.D.N.Y. 1999) (citing *Fonar
Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997)).

Janes Decl. (Dkt. No. 18-5) ¶ 5.  Neither of the other two defendants

named in plaintiff's complaint, and against whom copyright infringement

claims are asserted, however, has given a sworn statement of similar

import.  Moreover, plaintiff's statement pursuant to Northern District of

New York  Local Rule 7.1(a)(3), to which plaintiff has not properly

responded, does not contain an assertion to the effect that it is undisputed

no copying of those papers occurred.[16]

On the other side of the coin, plaintiff has asserted that following

their confiscation, his papers were copied.  *See* Complaint (Dkt. No. 1) at

4; Monroe Decl. (Dkt. No. 14) ¶ 1.  That allegation is made, however, in

purely conclusory terms, without indication of the basis for plaintiff's

knowledge of actual reproduction or the extent of the copying alleged, and

appears to represent little more than rank speculation that his papers once

---

[16]     The consequences of the plaintiff's failure to respond to defendants'
Local Rule 7.1(a)(3) Statement are potentially significant.  By its terms, Local Rule
7.1(a)(3) provides that "any facts set forth in the Statement of Material Facts shall be
deemed admitted unless specifically controverted by the opposing party."  *See*
N.D.N.Y.L.R. 7.1(a)(3).  Courts in this district have not hesitated to enforce Rule
7.1(a)(3) and its predecessor, Rule 7.1(f), by deeming facts admitted upon an opposing
party's failure to properly respond.  *See, e.g.*, *Elgamil v. Syracuse Univ.*, No. 99-CV-
611, 2000 WL 1264122, at *1 (Aug. 22, 2000) (McCurn, S.J.) (listing cases); *see also*
*Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (discussing
district courts' discretion to adopt local rules like 7.1(a)(3)).  Consequently, had
defendants asserted in their statement of undisputed facts that no copying of plaintiff's
papers took place, that fact would be deemed established for purposes of this motion.

confiscated, were copied by prison officials.[17]

Drawing all inferences in plaintiff's favor, at least insofar as defendants' motion is concerned, I am unable to conclude that the record definitively establishes plaintiff's protected logo was not copied, and that no reasonable factfinder could determine otherwise.  It is readily apparent, however, that if copying occurred, as alleged, it was done not for commercial exploitation, but instead only for potential use in connection with disciplinary proceedings against the plaintiff.  Under such circumstances, defendants' actions would plainly qualify as fair use under 17 U.S.C. § 107, and consequently are not sufficient to support a claim of infringement.  *Cf. Religious Tech. Ctr. v. Wollersheim,* 971 F.2d 364 (9th Cir. 1992); *see also City Consumer Servs., Inc. v. Horn,* 100 F.R.D. 740 (D. Utah 1983).  Accordingly, I recommend dismissal of plaintiff's copyright infringement claims on this basis.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

Plaintiff's complaint, while concise, asserts a host of constitutional

---

[17]     Plaintiff's failure to identify the defendants directly responsible for the alleged copying of his protected logo could provide an independent basis for dismissal of his copyright infringement claim.  *Mahnke v. Munchkin Products, Inc.*, 2001 WL 637378, at *5 (S.D.N.Y. June 7, 2001) (stating that a properly pleaded claim of copyright infringement, *inter alia*, must assert "by what acts and during what time the defendant infringed the copyright.").

and copyright infringement claims growing out of the search of his prison
cube, the confiscation of materials deemed by prison officials to be
contraband and evidence of a potential disciplinary infraction, and
resulting disciplinary proceedings.  Because the plaintiff, as a prison
inmate, had no legitimate expectation of privacy, the search of his cube
did not violate his rights under the Fourth Amendment.  And, since the
papers seized are alleged to have been possessed in violation of
controlling prison rules, and in any event were returned to the plaintiff
following culmination of the disciplinary proceedings against him, the
confiscation does not implicate plaintiff's rights under the Fourth
Amendment.

Because the disciplinary charges against him and ensuing
disciplinary proceedings did not result in the deprivation of a
constitutionally cognizable liberty interest, nor has plaintiff established that
he was denied procedural due process, even assuming such a
deprivation, he has failed to establish a procedural due process violation.
Additionally, although plaintiff was treated differently than his fellow inmate
and business partner, who also allegedly committed the same offense, the
plaintiff has not established that the disparity in treatment was based upon

his membership in a suspected class or was the result of invidious discrimination not related to legitimate penological concerns.  Accordingly, plaintiff's Fourteenth Amendment Equal Protection Clause fails as a matter of law.

As for plaintiff's remaining claims, I find as a matter of law that plaintiff's service of seventy-six days of disciplinary confinement in ordinary SHU conditions did not constitute cruel and unusual punishment in violation of the Eighth Amendment.  Similarly, I conclude that plaintiff's claim of copyright infringement fails based upon the fact that any copying, if it did in fact occur, was presumably limited to the extent necessary to support disciplinary charges against him, rather than for commercial exploitation, and consequently represented fair use under the Copyright Act.  Accordingly, it is hereby

RECOMMENDED, that defendants' motion for summary judgment (Dkt. No. 18) be GRANTED, and plaintiff's complaint be DISMISSED in its entirety, and that plaintiff's cross-motion for summary judgment (Dkt. No. 14) be DENIED in light of this determination.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections

34

shall be filed with the Clerk of the court.  FAILURE TO OBJECT TO THIS

REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*,

984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the court serve a copy of this

report and recommendation upon the parties in accordance with this

court's local rules.


Dated:        January 14, 2008
              Syracuse, NY



David E. Peebles
U.S. Magistrate Judge